**2012-1390**

**United States Court of Appeals for the Tenth Circuit**

Stephanie Salazar,

Plaintiff-Appellant,

v.

City of Commerce City; Gerald M. Flannery, in his individual capacity;
Paul Natale, in his individual capacity;
Heather Olson, in her individual capacity;
Tom Acre, in his individual capacity.

Defendants-Appellees.

On Appeal from the United States District Court for the District of Colorado
The Honorable Judge Lewis T. Babcock
10-CV-01328-LTB

_____

**Reply Brief of Appellant Stephanie Salazar**

_____

Cox Baker & Page, LLC
Anne Whalen Gill
858 Happy Canyon Rd., Ste. 215
Castle Rock, CO 80108
(303) 688-8588
Counsel for Appellant

**ORAL ARGUMENT IS NOT REQUESTED**

i

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Stephanie Salazar v. City of Commerce City; Gerald M. Flannery, in his
individual capacity; Paul Natale, in his individual capacity; Heather Olson,
in her individual capacity; Tom Acre, in his individual capacity.

Case No. **2012-1390**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….iv

RESPONSE TO STATEMENT OF THE CASE AND THE FACTS
……………………………..………………………………………..……….1

SUMMARY OF THE ARGUMENT………………………………………..5

ARGUMENT……………………………………………………………….6

   1.  The District Court erred in granting summary judgment on all of Ms.
     Salazar's discrimination claims…………………………………….6

   A. The District Court erred in concluding that Ms. Salazar did not meet
     her burden of showing that the reasons for her discharge were
     pretextual……………………………………………………….……..6

   B. The Court erred in granting summary judgment on the Abridgement
     of First Amendment rights when it concluded Ms. Salazar spoke as an
     employee rather than as a private citizen………………………….12

   C. The Court erred in concluding there was no evidence that Defendants
     Natale and Olsen did not make any decision related to Ms. Salazar's
     employment and dismissing claims against them………………..17

CONCLUSION……………………………………………………………18

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)................................................... 20

*Board of County Commissioners v. Umbehr* , 518 U.S. 668, 674 (1996)......................... 20

*Brammer-Hoetler v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1203-1204 (10th Cir.
   2007) ...................................................................................................................... 16

*Carney v. City and County of Denver,* 534 F.3d 1269, 1273 (10th Cir. 2008).................. 11

citing *Rivera v. City and County of Denver***,** 365 F.3d 912, 924-25 (10th Cir. 2004) ....... 20

*Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) ................................................... 16

*Connick v. Meyers*, 461 U.S. 138, 75 L.Ed. 2d 708, 103 S.Ct. 1684 (1983).............. 17, 18

*EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2000).................... 13

*Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1227 (10th Cir. 2007)......................... 11

*Finn v. New Mexico*, 249 F.3d 1241, 1249 (10th Cir. 2001) ............................................ 18

*Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). .............................................................. 16

*Holopirek v. Kennedy and Coe, LLC*, 303 F.Supp.2d 1223, 1240 (D. Kan. 2004) .......... 14

*Hulen v. Yates*, 322 F.3d 1229, 1239-40 (10th Cir. 2003).................................................. 16

*Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 668 (10th Cir.
   1991). ...................................................................................................................... 12

*Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. Okla. 1999)............................... 17, 18

*Johnson v. University of Cincinnati*, 215 F.3d 561, 577 (6th Cir. 2000).......................... 15

*Kannady v. City of Kiowa,* 590 F.3d 1161 (10th Cir. 2010) ................................................ 9

*Kent v. Martin,* 252 F.2d 1141, 1145-46 (10th Cir. 2001).................................................. 18

*Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998)........................................... 17

*Martinez v. Beggs,* 563 F.3d 1082 (10th Cir. 2009) ............................................................. 9

*Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999) ........................................ 10, 11

*Pickering v. Board of Educ.*, 391 U.S. 563, 20 L.Ed 2d 811, 88 S.Ct. 1731 (1968) .. 17, 18

*Randle v. City of Aurora*, 69 F.3d 441, 450-451 (10th Cir. 1995).................................... 10

*Rankin v. McPherson,* 483 U.S. 378 (1987) ...................................................................... 20

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150-151 (2000).......... 13, 20

*Schuler v. City of Boulder*, 189 F.3d 1304 (10th Cir. 1999)............................................. 18

*Scockency v. Ramsey Co.*, 493 F.3d 941, 949 (8th Cir. 2007).......................................... 17

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).......................................... 14

*Young v. Dillon Companies***,** 468 F.3d 1243, 1250 (10th Cir. 2006) ................................. 20

## Statutes

Title VII, 42 U.S. C. §§ 1981 and 1983,.......................................................................... 9

## RESPONSE TO STATEMENT OF THE CASE AND THE FACTS

As a victim of prolonged gender discrimination and a hostile work environment, and violation of her First Amendment right to speak out objecting to discrimination, Ms. Salazar how detailed support for her specifically identified claims.

Defendants mischaracterize, overstate, or misconstrue numerous statements in the opening brief. Ms. Salazar, in reviewing the Answer brief, has identified a few typographical errors in her record cites, and provides the following chart of errata:

Page 3: line 4     pp. 24-25

      line 5     pp. 25-26

      line 8     pp. 26-27

      line 9     p. 28

Page 10: line 3     p. 161

Page 18: line 10 record cite should be *Id.*

      line 12     Id. at 571-572.

Page 19: line 2     pp. 507-517

      line 5     pp. 508-512

Additionally, counsel attributed statements to Mr. Flannery that were actually made by Mr. Tinklenberg or vice versa. Counsel apologizes for the errors, although it was the fact of the statements rather than who made them that is important.

Appellees place emphasis on the adverse jury verdict on the retaliation claim, asserting that it demonstrates that the summary judgment ruing was appropriate on the discrimination claims. In so arguing, they conveniently ignore that presentation of a retaliation case does not include evidence on issues decided in the summary judgment ruling. Rather, the jury verdict was exclusively directed to the remaining claim that she was retaliated against for asserting that there had been discrimination. At trial, she did not attempt to establish discrimination – only that she had reported discrimination and had been retaliated against as a result. The resulting verdict does not show that Appellees, as they claim, proved there was no discrimination. At most the verdict shows that Ms. Salazar did not prevail on her retaliation issue.

Appellees selectively reference the Appendix, and paraphrase it to create a misleading impression of deposition statements and affidavits. For example, they start their statement of facts by referencing Mr. Limbaugh's testimony as saying that he did not believe that any lack of support had anything to do with Ms. Salazar's gender. The lines referenced show  that

2

he cannot say it is true. The following sentence asserts that Ms. Salazar relied "solely" on her own perceptions. In fact, Mr. Limbaugh and others supported the fact that she and her staff were excluded from meetings. Such distortions permeate Appellees' statement of "facts," which weave argument into the fabric of their presentation. Ms. Salazar has provided citations to support her presentation, and the mere argument on page 5-6 of the Answer Brief that Mr. Flannery "hotly contested" comments attributed to him indicates the material facts were disputed. Further statement presented as facts on page6 of the Answer Brief demonstrate the ever shifting positions that Ms. Salazar has attempted to address: Appellees assert she waited months to report discrimination, but she is too focused on regulations, she did not object enough, all the while ignoring her fear of reprisal for speaking out against discrimination. App. IV, p. 662. Her statement about Lenard Lucero should have been tied to Mr. Tinklenberg rather than Mayor Natale. *Id.* She correctly stated in the opening brief that she reported the June 1, 2007 meeting. She did not report the incident to Mr. Tinklenberg who had been present, she reported to Chief of Staff Greer. App. II, p. 420. Her report to the City Council did not use the word "gender discrimination' or "national origin discrimination," but detailed specific incidents of those types of discrimination.

3

In describing Ms. Salazar's response to her evaluation, Appellees emphasize that she started before she saw the revised evaluation. That mischaracterization of her position ignores that she made her notes after meeting with Mr. Flannery and Mr. Tinklenberg about the evaluation, then waited to draft her response until she saw the revisions to the evaluation. App. IV, pp. 624-625.

The written reprimand clearly referenced the earlier performance evaluation. App. Iv., p. 673. Historically, Ms. Salazar objected to gender bias. Vol. II, p. 431. She expressly presented her position as a homeowner and resident of Commerce City. *Id. at p. 414.*

In sum, Appellees have presented in "Statement of Facts" exactly the kind of distortion they attribute to Ms. Salazar. They have demonstrated that there are indeed material issues of disputed facts in this case. Ms. Salazar asks this Court to withhold judgment until the record has been reviewed, existence of factual disputes have been considered, and arguments have been fully evaluated.

## SUMMARY OF ARGUMENT

The District Court committed reversible error in granting summary judgment dismissing Ms. Salazar's discrimination claims because she presented evidence, which a jury could believe, that she was discriminated against on the basis of gender and that the reasons advanced for her termination were pretextual.  Contrary to Appellees' assertions, they did not prove, nor did they address, whether Ms. Salazar with the subject of gender and national origin discrimination.  Ms. Salazar spoke out against illegal discrimination in the work place, both on the basis of gender and national origin.  She was rightfully fearful of retaliation as she was fired in a termination letter citing her inability to work as part of a team.

Mr. Flannery admitted that he made the decision to fire Ms. Salazar based on her written statements opposing workplace discrimination.  For Appellees to allege non-discriminatory reasons support her termination ignores that discrimination was the dispositive factor.

Defendants Natale and Olson were active participants in the discriminatory actions against Ms. Salazar and should not be permitted to hide behind the cloak of immunity.  Ms. Salazar presented evidence of their involvement that demonstrates the ruling on immunity was erroneous.

## ARGUMENT

**1. The District Court erred in granting summary judgment on all of Ms. Salazar's discrimination claims, arising under Title VII, 42 U.S. C. §§ 1981 and 1983, and the First Amendment.**

**A. In granting summary judgment as to gender and national origin discrimination on all bases, the District Court erred in concluding that Ms. Salazar did not meet her burden of showing that the reasons for her discharge were pretextual.**

Appellees argue that Ms. Salazar did not show that her termination was "more likely" motivated by gender or national origin discrimination than the non-discriminatory reasons advanced by the City. This argument clearly demonstrates that the Court had to weigh the proffered evidence in ruling on the summary judgment motion. Summary judgment is granted where the pleadings, the materials on file, and any affidavits show there are no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law. *Kannady v. City of Kiowa,* 590 F.3d 1161, 1168 (10th Cir. 2010) (citing *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotation marks omitted). The reviewing Court must construe the factual record and reasonable inferences in the light most favorable to the

non-moving party. *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

Appellees ignore the evidence that Ms. Salazar was terminated because, for example, of her complaints of discrimination against Navajo Lisa Wayne, Vol. I, p. 241, and that her complaints were the basis for her termination. *Id. at p. 262.* Mr. Acre had substantial difficulty substantiating the reasons presented in the termination letter, and he did not have evidence to support the articulated reasons. See, e.g. *Id. at 223-226* (not appropriate to fire Ms. Salazar because someone is bad-mouthing her; no documents memorializing comment supposedly made about her).

With testimony from her supervisor that he had practically non-existent evidence for the reasons for termination in the termination letter, the Court's weighing of the evidence to rule that Ms. Salazar had not presented sufficient evidence of pretext to survive summary judgment. *Randle v. City of Aurora*, 69 F.3d 441, 450-451 (10th Cir. 1995). See also *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).

*Gender Discrimination*

The standards for showing gender discrimination are the same whether brought under Title VII, § 1981 or § 1983. *Carney v. City and County of Denver,* 534 F.3d 1269, 1273 (10th Cir. 2008); *Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1227 (10th Cir. 2007).

Here, Ms. Salazar offered evidence of a hostile work environment dating from the start of her employment with Commerce City. The City Manager, Perry VanDeventer, made discriminatory comments. Councilman Natale, referred to female employees as "Perry's harem." Ms. Salazar was advised that she would not be treated as a Director, even though that was the position she had been hired to fill. App. II, Ex N, at p. 350. From the beginning of her employment, she and her department were not invited to meetings that were necessary to coordinate the Economic Development Department agenda with the other City departments. App. I, Ex F, at pp. 203-204; App. II, Ex J, at p. 318; Ex K, at pp. 325-327. At a meeting on June 1, 2007, with Deputy Assistant City Manager Tinklenberg, and Ms. Salazar, acting Director of Planning, Chris Cramer was angry, belligerent, and rude. App. II, Exhibit K, pp. pp. 361-365. She was told he would be required to apologize. He was not required to do that, and he received a favorable evaluation with no mention of the incident. App. II, Ex K, at 334.

It was Ms. Salazar who was criticized for communication issues.  App. IV, Ex U, pp. 647-656.

Ms. Salazar specifically complained that she had been the subject of harassment, and that white-male Directors were given favored status over-and-against her, and female Department Directors. She cited the treatment of another female Chief-of-Staff/Acting Assistant City Manager Patricia Greer as an example of disparate treatment and gender discrimination which was being practiced against Appellant also. Vol. II, pp. 428-429, 432.  See also *Id. at p. 431* (gender bias of Acting City Manager Clements).  See also Vol. V, pp. 81-90, Salazar memo to Attorney Merrigan.

Appellees argue that the District Court correctly applied *Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 668 (10th Cir. 1991).  That argument is fatally flawed because of Appellees' insistence that Ms. Salazar did not raise "hostile work environment" until her response to the Motion for summary judgment.  As pointed out in the opening brief, Ms. Salazar's complaint detailed numerous incidents of discrimination throughout her tenure with the City.  The final Pretrial Order (App. III, pp. 502-512) did not use the term "hostile work environment," but that term clearly encompasses the detailed description of Ms. Salazar's claims.  See Final Pretrial Order, App. III, pp. 503-507.   Appellees have ignored this

9

reality in their efforts to castigate Ms. Salazar's position.  Even if she had not raised the issue by detailing specifics which constitute a hostile work environment, the use of the phrase in her response to summary judgment should be adequate to raise the issue and survive summary judgment.  Ms. Salazar proffered substantial evidence of pervasive discrimination and hostile work environment, directed both to herself and others, that should have been allowed to go to trial.

The District Court impermissibly weighed the evidence.  As the Supreme Court held in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150-151 (2000), the trial court should not weigh the evidence or credibility.  Appellees' sarcasm does not obscure the reality of multiple complaints of gender discrimination from several female employees, demonstrating that the evidence was not viewed in the light most favorable to Ms. Salazar.  The Court did come to an erroneous conclusion that there was no pattern of sex discrimination.

Appellees' efforts to distinguish *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2000), are unavailing.  The Court there held that a defendant employer may not defeat a prima facie case by challenging the plaintiff's qualification for the position.  Rather, the plaintiff must be provided the opportunity to demonstrate whether subjective criteria were "a

means to effect a discriminatory action." *Id. at 1192.* Here, resolution of these issues should not have occurred at the summary judgment phase.

Appellees continue to argue that all problems arose solely because of Ms. Salazar and deny that there were any discriminatory actions or reasons involved in her treatment and termination. The weight of evidence of the problems, the communications issues, the exclusion from necessary meetings (while all male directors were expressly invited and included) all go to the fact that Ms. Salazar presented evidence that should have overcome the motion for summary judgment. As argued in the opening brief, once the employer's proffered reasons are rejected, the trier of fact may infer discrimination, and "no additional proof of discrimination is required." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

Appellee's effort apply *Holopirek v. Kennedy and Coe, LLC*, 303 F.Supp.2d 1223, 1240 (D. Kan. 2004), continues the District Court's error. The *Holopirek* Court found the evidence of a "good old boy" network was not relevant to the issue whether Plaintiff had been terminated based on her gender. The Plaintiff there failed to link her evidence to her termination. As pointed out in the opening brief, Ms. Salazar has linked her evidence of discrimination to the change in her performance evaluations, the contrast between the treatment of women and the treatment of Chris Cramer. That

11

stands in direct contrast to the *Holopirek* Plaintiff who did not connect her treatment to the existence of a good old boy network. The District Court her erred in limiting its analysis to only Ms. Salazar's termination, when it should have also considered her treatment over the years leading up to her termination.

Next, Appellees inexplicably assert that *Johnson v. University of Cincinnati*, 215 F.3d 561, 577 (6th Cir. 2000), is distinguishable because it involved a plaintiff who protested actions regarding another employee. Yet, Ms. Salazar protested the treatment and remarks against Lisa Wayne for being a Navajo. That is hardly a matter personal to Ms. Salazar.

In conclusion, Ms. Salazar presented evidence that, when viewed in the light most favorable to her, showed that the Appellees' articulated reasons for her termination were pretextual. The District Court erred in granting summary judgment on her claims of discrimination.

.

**B. The Court erred as a matter of law in granting summary judgment on the Abridgement of First Amendment rights when it concluded that Ms. Salazar spoke as a public employee rather than as a private citizen.**

12

The First Amendment protects a public employee's rights to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The rights are restricted, inasmuch as the public employee must show that the speech was not pursuant to official duties. *Brammer-Hoetler v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1203-1204 (10th Cir. 2007). The speech must go to a matter of public concern, and the employee's interests in commenting outweigh the potentially disruptive effect of the speech. *Id.* at 1202-1203.

Appellees attempt to argue that Ms. Salazar was required to report discrimination so all her comments went to her performance as an employee. Is so arguing, Appellees ignore a long line of cases for the proposition that commenting on discrimination is a matter of public concern. A public employee's speech that seeks to expose government corruption or waste, or questions the integrity of government officials has generally been held to constitute matters of public concern. *Hulen v. Yates*, 322 F.3d 1229, 1239-40 (10th Cir. 2003) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [state] officials, in terms of content, clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)) (Emphasis in original.). A

balancing test of the employee's speech against the employer's interests is derived from *Pickering v. Board of Educ.*, 391 U.S. 563, 20 L.Ed 2d 811, 88 S.Ct. 1731 (1968), and *Connick v. Meyers*, 461 U.S. 138, 75 L.Ed. 2d 708, 103 S.Ct. 1684 (1983) (the "Pickering/Connick test"); *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. Okla. 1999).

Under the first prong, a government employee's speech is of public concern, and therefore entitled to First Amendment protection, if it is "'of interest to the community, whether for social, political, or other reasons.'" *Id*. at 1271 (quoting *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998)). Thus, Ms. Salazar satisfied the first prong of the *Pickering/Connick* test.

Under the second *Pickering/Connick* prong, a Plaintiff must show that her "interest in the expression outweighs the government employer's interest in regulating it." *Jantzen*, 188 F.3d at 1257. Here, the Appellees never once uttered a prediction or concern about workplace disruption or an interest in efficient city operations or any other government employer's interest in regulating Ms. Salazar's speech to ensure an efficient and effective workplace. If disrupt to the workplace is has not been shown, the balancing test need not be applied. *Scockency v. Ramsey Co.*, 493 F.3d 941, 949 (8th Cir. 2007).

Moreover, Ms. Salazar showed that her speech was a motivating factor in her termination as demonstrated by the termination letter, and the deposition testimony of Natale and Acre. Under the fourth *Pickering/Connick* prong, the burden shifts to the Appellees to demonstrate that they would have taken the same employment action against Appellant even in the absence of the protected speech. *Jantzen*, 188 F.3d at 1257. For the reasons set forth above, Appellees are not able to meet this burden but nevertheless this is a genuine issue as to any material fact for the jury to decide. "The first two parts…are questions of law for the court; the remaining two steps are questions of fact for the jury." *Jantzen*, 188 F.3d at 1257. See also *Finn v. New Mexico*, 249 F.3d 1241, 1249 (10th Cir. 2001) (employer must show actual disruption). Further, a claim of disruption does not apply when the employer's challenged actin comes months after the protected speech. *Kent v. Martin,* 252 F.2d 1141, 1145-46 (10th Cir. 2001).

The Court should take note of the uncanny similar fact pattern presented in *Schuler v. City of Boulder*, 189 F.3d 1304 (10th Cir. 1999). The Tenth Circuit has held that in First Amendment cases, employment actions short of discharge are sufficient to support a retaliation claim. In the case of *Schuler* a city employee sued her employer for retaliation in violation of First Amendment rights. As a result of her protected conduct, the appellant

alleged she was "berated, reprimanded, received poor performance reviews, had duties removed and was involuntarily transferred." Defendants in *Schuler* argued that appellant was not subjected to an adverse employment action. The district court disagreed and denied defendants' motion for summary judgment on the issue. Schuler could not be removed from duties for complaining of light discipline for a male employee who was caught spying on the women's locker room from a crawl space. The Tenth Circuit affirmed the decision of the district court.

Here, Ms. Salazar complained of <u>no</u> discipline for a white-male manager. Her immediate supervisor informed her that discipline was justified for the white-male manager, but, failed to report the incident concerning the white-male manager to Human Resources. Subsequently, Spencer allegedly investigated the incident nine months after the fact, and exonerated the white-male manager of any wrongdoing and that there was no policy violation.

The record indicates that Appellees did not honestly believe the reasons they alleged for reprimanding and terminating Ms. Salazar and did not act in good faith upon those beliefs. This goes to Appellees "intent" and the need for caution in granting summary judgment.

Tenth Circuit law clearly requires Appellees must honestly believe the reasons cited for the adverse employment action taken against Appellant, and that they acted in good faith upon those beliefs. Appellees did not meet this burden or satisfy the requirement of Tenth Circuit controlling law. *Young v. Dillon Companies*, 468 F.3d 1243, 1250 (10th Cir. 2006)(citing *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)).

> **C. The Court erred in concluding there was no evidence that Defendants Paul Natale and Heather Olson did not make any decision related to Ms. Salazar's employment and dismissing claims against them.**

An actor, whether state or private, may be liable for discrimination when the actor is a willing participant in joint activity with the State or its agents. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). As pointed out in the opening brief, there was evidence that both Natale and Olsen participated in the actions against Ms. Salazar. See, e.g., *Reeves v. Sanderson Plumbing Products, Inc.,* 520 U.S. 133, 152 (2000) (evidence of who was the actual decision maker against plaintiff). Both Olsen and Natale operated behind the scenes while setting the stage for the ultimate termination of Ms. Salazar.

In *Board of County Commissioners v. Umbehr* , 518 U.S. 668, 674 (1996), the U.S. Supreme Court cited *Rankin v. McPherson,* 483 U.S. 378 (1987) in its opinion. ("We have held that government workers are

constitutionally protected from dismissal…for publicly or privately criticizing their employer's policies, for expressing hostility to prominent political figures….")

The District Court erred by restricting its assessment of the evidence to merely whether an elected official had the authority to terminate an employee.  The evidence here was sufficient to go to the trier of fact to assess the evidence of Mayor Natale exerting his influence to obtain the results he had suggested.

## Conclusion

Ms. Salazar requests this Court to reverse the Order granting summary judgment as to her discrimination claims of gender discrimination and national origin discrimination and her First Amendment claim, and remand for these issues to be tried.


Respectfully submitted

_____
S/Anne Whalen Gill
Cox Baker & Page, LLC
858 Happy Canyon Rd., Ste. 215
Castle Rock, CO 80108

Counsel for Stephanie Salazar

## Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) because:
    a. [x] It contain 38,35 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)

May 28, 2013

> S/Anne Whalen Gill
> Cox Baker & Page, LLC
> 858 Happy Canyon Rd., Ste. 215
> Castle Rock, CO 80108
>
> Counsel for Stephanie Salazar

**CERTIFICATE OF VIRUS SCAN**

I hereby certify that:
1. All required privacy redactions have been made.
2. Paper copies of the Brief of Appellant have been submitted to
the court and the ECF submission is an exact copy of the brief.
3. The Brief of Appellant has been scanned for viruses using
[Symantec Endpoint Protection], and according to the program
is free of viruses.

Dated:  May 28, 2013

s/Anne Whalen Gill
Counsel for Stephanie Salazar

**Certificate of Service**

I hereby certify that on this 28th day of May 2013, I caused this Brief
of Appellant to be filed electronically with the Clerk of the Court using the
CM/ECF System, which will send notice of such filing to the following
registered CM/ECF users:

Marni L. Nathan Kloster
J. Andrew Nathan
NATHAN, BREMER, DUM &MYERS
7900 East Union Avenue, Suite 600
Denver, Colorado 80237
(303) 691-3737
*Counsel for Appellees*

I further certify that on this 28th day of May 2013, I caused the
required number of bound copies of the foregoing Brief of Appellant to be
filed, via UPS Next Day Air, with the Clerk of this
Court.

/s/ Anne Whalen Gill

*Counsel for Appellant*

21